UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
EDWARD LABACZ and SUSAN LABACZ,   :
        :
        Plaintiffs    :        **MEMORANDUM & ORDER**
        :        **19-cv-528 (DLI)(RML)**
        -against-        :
        :
JEFFERY G ROHR, ASH TRANSPORT, LLC, :
CARLOS FERNANDEZ-RODRIGUEZ, and   :
FERRARO FOODS INC.,        :
        :
        Defendants.    :
------------------------------------------------------------ x

**DORA L. IRIZARRY, United States District Judge:**

This is a personal injury action before the Court pursuant to its diversity jurisdiction that resulted from a motor vehicle accident that took place in April of 2016 (the "Accident"). Edward Labacz ("Edward") and Susan Labacz ("Susan") (collectively, "Plaintiffs") commenced this action against Carlos Fernandez-Rodriguez ("Rodriguez"), Ferraro Foods Inc. ("Ferraro"), Jeffrey G. Rohr ("Rohr"), and Ash Transport LLC ("Ash") (collectively, "Defendants"), alleging: (1) negligence and (2) loss of society, services, and consortium claims stemming from the Accident. *See generally*, Am. Compl., Dkt. Entry No. 43.

Before the Court is the parties' second set of motions *in limine*. Rodriguez and Ferraro (the "Ferraro Defendants") move to preclude the expert opinions of Dr. Joseph Carfi, M.D. ("Dr. Carfi") and Dr. Leonard Freifelder ("Dr. Freifelder"). *See*, Ferraro Defs.' Mot. Lim. Br. ("Ferraro Mot."), Dkt. Entry No. 123-2. Rohr and Ash (collectively, the "Ash Defendants") move to: (1) preclude the expert opinions of Dr. Carfi and Dr. Freifelder; (2) reserve the right to call Susan as a witness at trial; and (3) preclude introduction of certain of Plaintiffs' proposed exhibits. *See*, Ash Defs.' Mot. Lim. Br. ("Ash Mot."), Dkt. Entry No. 124. Plaintiffs filed a single

opposition responding to both motions.  *See*, Pls.' Opp'n, Dkt. Entry No. 127.  The Ferraro and Ash Defendants each filed a reply.  *See*, Ash Defs.' Reply ("Ash Reply"), Dkt Entry No. 131; Ferraro Defs.' Reply ("Ferraro Reply"), Dkt. Entry No. 132.

Plaintiffs also move to: (1) deem Dr. Carfi's and Dr. Freifelder's testimony admissible; (2) preclude the written reports of Bradford Silver ("Silver"), Stephen Emolo ("Emolo"), Edmond Provder ("Provder"), Dr. Steven Weinfeld, M.D. ("Dr. Weinfeld"), and Dr. Norman Marcus, M.D. ("Dr. Marcus"); (3) preclude the expert testimony of Silver and Emolo; and (4) permit Plaintiffs to move at trial to admit certain exhibits from Dr. Carfi's and Dr. Freifelder's expert reports.  *See*, Pls.' Mot. Lim. Br. ("Pls.' Mot."), Dkt. Entry No. 125.  The Ash and Ferraro Defendants both opposed.  *See*, Ferraro Defs.' Opp'n ("Ferraro Opp'n"), Dkt. Entry No. 128; Ash Defs.' Opp'n ("Ash Opp'n"), Dkt. Entry No. 130.  Plaintiffs replied.  *See*, Pls.' Reply, Dkt. Entry No. 134.

For the reasons set forth below, Defendants' motions are denied, and Plaintiffs' motion is granted in part and denied in part.

## LEGAL STANDARD

The admissibility of expert testimony is a preliminary question of law for the court to determine and is governed primarily by the Federal Rules of Evidence.  *See*, Fed. R. Evid. ("FRE") 104(a).  *See also*, *U.S. v. Walker*, 2023 WL 3451419 (2d Cir. May 15, 2023).  Rule 702 provides that an expert witness may testify at trial if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

FRE 702. The district court is the "ultimate gatekeeper" and must ensure that an expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *U.S. v. Jones*, 965 F.3d 149, 161 (2d Cir. 2020); *Dover v. British Airways, PLC (UK)*, 254 F. Supp.3d 455, 458 (E.D.N.Y. 2017).

Courts conduct a three part test when evaluating the admissibility of expert testimony that asks whether: (1) the witness is qualified to be an expert; (2) the expert's opinion is based on reliable data and methodology; and (3) the expert's testimony will assist the trier of fact. *See*, *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005). As to reliability, the Supreme Court set out a nonexhaustive list of factors to consider, including: (1) whether the technique has been or can be tested; (2) whether the technique has been subjected to peer review; (3) the known or potential rate of error and whether standards exist to control the technique's operation; and (4) whether the technique is "generally accept[ed] in the relevant scientific community." *See*, *U.S. v. Morgan*, 675 Fed. App'x 53, 55 (2d Cir. 2017) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593-94 (1993)). However, the inquiry under Rule 702 is necessarily a "flexible one," and not every factor applies to all experts or cases. *See*, *Kumho Tire Co., Ltd v. Carmichael*, 526 U.S. 137, 139 (1999).

District courts generally assume that expert evidence is reliable. *See*, *UMG Recordings, Inc. v. Lindor*, 531 F. Supp.2d 453, 456 (E.D.N.Y. 2007). As such, exclusion of expert testimony is "the exception rather than the rule." *See*, FRE 702, Advisory Comm. Notes; *See also*, *Simpson v. New Prime, Inc.*, 2022 WL 17961213, at *1 (E.D.N.Y. Dec. 27, 2022) (citing FRE 702, Advisory Comm. Notes). District courts enjoy "broad latitude" in determining whether expert testimony is reliable and only "serious flaws in reasoning or methodology will warrant exclusion." *See*, *B&R Supermarket, Inc. v. Visa Inc.*, 2024 WL 4252031, at *3 (E.D.N.Y. Sept. 20, 2024). However, "[i]f

3

an expert's testimony lies within 'the range where experts might reasonably differ,' the jury, and not the trial court, should 'decide among the conflicting views of different experts.'" *In re Fosamax Products Liability Litig.*, 645 F. Supp.2d 164, 173 (S.D.N.Y. 2009). The analysis does not require a court to scrutinize the actual conclusions drawn by a party's expert witness. *See*, *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002).

## DISCUSSION

### I. Defendants' Motions *In Limine*

All Defendants seek to preclude the expert testimony of Dr. Carfi and Dr. Freifelder on the basis that they did not utilize reliable principles or methodologies.[1] The Ash Defendants also seek to preclude Plaintiffs from introducing a number of exhibits and to reserve the right to call Susan as a witness at trial. *See*, Ash Mot. at 8.

Courts are afforded "considerable leeway" when determining the reliability of expert testimony but still must examine rigorously the "facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *See*, *Kumho Tire*, 526 U.S. at 152; *Amorgianos*, 303 F.3d at 267. Courts should not admit expert testimony that is connected to existing data by only the *ipse dixit* of the expert. *See*, *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). District courts also enjoy significant discretion in determining the admissibility of evidence under the Federal Rules. *See*, *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379 (2008).

---

[1] Defendants do not contest the qualifications of Plaintiffs' experts, nor the relevance of their testimony.

### A.      Joseph Carfi, M.D.

Plaintiffs intend to offer Dr. Carfi as a physical medicine and rehabilitation expert. *See*, Dkt. Entry No. 123-3. Dr. Carfi is a medical doctor board certified in physical medicine and rehabilitation and a certified independent medical examiner. *Id.* at 23. He earned his medical degree from Mt. Sinai School of Medicine, his master's degree in chemistry, and his bachelor's degree in biology. *Id.*

Dr. Carfi prepared for Plaintiffs a narrative clinical evaluation report based on his review of Edward's medical records, as well as an interview with and clinical examination of Edward. *See*, Letter from Dr. Carfi to John A. Blythe, Esq., Dkt. Entry No. 123-3, Ex. A ("Carfi Report") at 1, 7. Dr. Carfi also prepared a life care plan ("Life Care Plan"), which he developed based on Edward's medical information and his own "training[,] knowledge[,] and experience." *Id*. at 13-20. The Life Care Plan itemizes and estimates the expected annual cost for each of Edward's continuing medical needs, including medical treatment, physical therapy, psychotherapy, medical equipment and supplies, medication, diagnostic studies, and home care service expenses. *Id.*

Defendants seek to preclude Dr. Carfi's testimony on the basis that he utilizes "unreliable principles and methodologies that are not widely accepted or utilized in his field." *See, e.g.*, Ferraro Mot. at ¶ 18. Specifically, Defendants seek to preclude Dr. Carfi from testifying: (1) that Edward requires continuing orthopedic visits and physical therapy because Dr. Carfi failed to provide a rationale as to why such treatment is necessary; (2) that Edward requires continuing physical therapy and diagnostic studies because the effectiveness of the treatment plan has plateaued and that Edward's condition has stabilized; (3) that Edward requires continuing psychotherapy because there is no diagnosis to support a need for lifetime psychotherapy; and (4) about the future costs of medications and equipment that Edward needs because Dr. Carfi inflated

these costs. *Id.* at ¶ 1. Defendants' arguments are without merit, and the Court finds that Dr. Carfi's testimony is not unduly speculative.

Defendants' arguments amount to nothing more than a disagreement with the conclusions drawn by Dr. Carfi. Indeed, Defendants repeatedly cite their own expert report to support the contention that Dr. Carfi's methods are "unreliable." *See, e.g.*, Ferraro Mot., at ¶ 19. Such arguments are insufficient to preclude expert testimony. The relevant inquiry under *Daubert* is whether the "conclusions were generated by a reliable methodology," not whether the Court or the opposing party agrees with their substance. *See*, *Park West Radiology v. CareCore Nat. LLC*, 675 F. Supp.2d 314, 326 (S.D.N.Y. 2009). Here, Dr. Carfi applied his training, background, and experience to interpret Edward's medical records, make clinical observations of Edward, and develop conclusions about Edward's continuing medical needs. Courts routinely admit expert testimony from medical doctors based on their examination of a patient's condition, regardless of whether the expert was the patient's treating physician. *See*, *Figueroa v. Bos. Sci. Corp.*, 254 F. Supp.2d 361, 365–66 (S.D.N.Y. 2003) (collecting cases).

In the absence of any indicia that the methods utilized by Dr. Carfi were unreliable, disagreements between the parties' experts as to what treatment may be necessary, whether and why costs were inflated, or whether specific factors should have been accounted for go to the weight of the evidence, not its admissibility. *See*, *Dover*, 254 F. Supp.3d at 461 ("Any arguable weakness in this methodology, or the possibility that relevant factors were omitted, goes to weight, not admissibility."). Defendants may address these questions on cross-examination. *See*, *Daubert,* 509 U.S. at 596. Accordingly, Defendants' motions are denied as to Dr. Carfi.

**B.**     **Leonard H. Freifelder Ph.D.**

Plaintiffs also intend to call Dr. Freifelder as an expert witness in economic loss. Dr. Freifelder earned his doctorate and master's degrees in operations research and statistics and his bachelor's degree in actuarial science, and owns his own economics, statistics, and actuarial science consulting firm. *See*, Dkt. Entry No. 123-5 at 34 (hereinafter, "Freifelder Rep.").

Dr. Freifelder's report calculates the "accident related loss of earnings and the future cost of treating the injuries" that Edward allegedly sustained. *See*, Freifelder Rep. at 1. The portion of Dr. Freifelder's report concerning Edward's future accident related medical needs and expenses is based, in part, on Dr. Carfi's opinion regarding Edward's future care needs and estimated annual medical costs. *Id.* at 11. The remainder of Dr. Freifelder's report, which concerns Edward's lost earnings, is based on Edward's income tax returns, his employment records, and publicly available statistics. *Id.* at 8-11. Defendants contend that the methods utilized by Dr. Freifelder are not generally accepted in his field and, thus, are unreliable.

First, Defendants seek to preclude Dr. Freifelder from testifying about Edward's lost future earnings because his conclusions are not supported by documentary evidence and ignore Dr. Provder's (Defendants' medical expert) opinion on Edward's ability to obtain replacement employment. *See*, Ferraro Mot. at 4. As explained above, such disagreements between experts are the province of the jury and do not constitute grounds to exclude expert testimony. Defendants also assert, in conclusory fashion, that Dr. Freifelder "relies heavily on speculation and manipulation of data" to determine Edward's pre-Accident wages because he adjusted Edward's pre-Accident earnings to determine Edward's pre-Accident earnings capacity. *See*, Ferraro Mot. at 4; *See also*, Dkt. Entry No. 123-5 at 9-10. Again, this goes to the weight of the evidence, not its admissibility. *See*, *Dover*, 254 F. Supp.3d at 461.

Second, Defendants assert that preclusion of all of Dr. Freifelder's testimony is warranted because Plaintiffs failed to provide the W-2s and/or tax statements that Dr. Freifelder relied on. *See*, Ferraro Mot. at 15. Rule 26(a)(2)(B) requires that an expert's report contain "a complete statement of all opinions the witness will express and the basis and reasons for them; [and] (ii) the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B). If an expert fails to make the required disclosures under Rule 26, the expert may be precluded from using that information at trial unless the failure to disclose was "substantially justified" or "harmless." *See*, Fed R. Civ. P. 37(c)(1); *See also*, *Koppell v. N.Y. State Bd. of Elections*, 97 F. Supp.2d 477, 482 (S.D.N.Y. 2000). However, "[s]anctions pursuant to Rule 37 are awarded at the discretion of the district court, and preclusion is generally not ordered," particularly where the sanction sought is preclusion of all of an expert's testimony. *See*, *Harkabi v. SanDisk Corp.*, 2012 WL 826892, at *7 (S.D.N.Y. Mar. 12, 2012).

While Defendants do not explain whether they requested this information during expert discovery pursuant to Rule 26 or the importance of these documents, they are entitled to their production and can use these documents on cross-examination to challenge Dr. Freifelder's opinions. The Court declines to preclude all of Dr. Freifelder's testimony on this basis, and Plaintiffs must produce copies of the W-2s and tax statements reviewed by Dr. Freifelder.

Third, Defendants seek to preclude Dr. Freifelder's testimony regarding Edward's future medical costs on the grounds that he erroneously relies on Dr. Carfi's report. *See*, Ferraro Mot. at 4. This argument is moot in light of the Court's conclusion set forth above that Dr. Carfi's testimony is admissible. Moreover, Dr. Freifelder's opinion is not a "conduit" opinion merely because he relies in part on Dr. Carfi's report. Experts may rely on the opinions of other experts "to the extent that they are of the type that would be reasonably relied upon by other experts in the

8

field" and so long as the expert produces his own opinion and does not act as a "mouthpiece" for another. *See*, *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp.2d 558, 664 (S.D.N.Y. 2007).

Here, Dr. Freifelder does not simply parrot Dr. Carfi's report. Dr. Freifelder only relies on Dr. Carfi's estimation of Edward's annual medical costs to calculate Edward's estimated lifetime medical costs, and Defendants cite no authority to suggest this reliance is unreasonable for an expert in Dr. Freifelder's field. The remainder of Dr. Freifelder's opinion regarding Edward's life expectancy, work life expectancy, earnings capacity, and work-related expenses, does not rely on Dr. Carfi's report. *See*, Freifelder Rep. at 8-11. For these reasons, the Court declines to preclude Dr. Freifelder's testimony as a "conduit" opinion.

Finally, Defendants ask that the Court limit Dr. Freifelder's testimony to "reliance on objective facts." *See*, Ferraro Mot. at 4. It is unclear what Defendants seek with this request, or what "subjective" facts they think Dr. Freifelder relied on. Accordingly, this request is denied.

For the reasons set forth above, Defendants' motions *in limine* are denied as to Dr. Freifelder. Plaintiffs are directed to produce the W-2s and tax documents that were provided to and reviewed by Dr. Freifelder.

### C.    Plaintiffs' Exhibits

The Ash Defendants also seek to prevent Plaintiffs from introducing into evidence at trial the following exhibits: (1) photographs of Edward's injuries; (2) pre-Accident photographs of Edward; (3) Edward's medical records and bills, including worker's compensation payments and lien records; and (4) the Tennessee Department of Homeland Security motor vehicle report for Rohr. *See*, Ash Mot. at 8-9. Many of the Ash Defendants' boilerplate objections to these exhibits were discussed at the November 7, 2024, Pretrial Conference, and the Ash Defendants provide little more in their motion *in limine*. *See*, Dkt. Entry No. 125-1.

As to the pre- and post-Accident photographs of Edward's injuries, Defendants contend that these photographs are duplicative of Edward's testimony and of Plaintiffs' proposed expert testimony. *See*, Ash Mot. at 8. As the Court explained at the November 7 Pretrial Conference, unless the photographs are so gory as to be prejudicial, a jury is entitled to see photographs of Edward and the injuries he sustained. *See*, Dkt. Entry No. 125-1 at 18.

The Ash Defendants' contention that Edward's medical records and bills, as well as worker's compensation records and lien records should be excluded as duplicative of witness testimony and prejudicial also is without merit. As the Court explained at the November 7 Pretrial Conference, such records are routinely permissible under Fed. R. Ev. 803(4). *See*, Dkt. Entry No. 125-1 at 16-19. The Ash Defendants fail to show how the admission of these exhibits would be prejudicial.[2]

Finally, the Ash Defendants' argument that Rohr's motor vehicle report should not be admitted because it is hearsay and not relevant is denied without prejudice to renew at trial. Rohr's driving record may be relevant depending on what purpose Plaintiffs intend to introduce this exhibit for, which Plaintiffs did not explain in their opposition. Moreover, the report may be admissible hearsay as either a business record under Fed. R. Ev. 803(6) or as a public record under Fed. R. Ev. 803(8).

Accordingly, the Ash Defendants' motion *in limine* is denied with respect to the pre- and post-Accident photographs of Edward, his medical records and bills, and worker's compensation and lien records, and is denied, without prejudice to renew at trial, as to Rohr's motor vehicle report.

---

[2] At the November 7 Pretrial Conference, counsel for Berkshire Hathaway Homestate Companies stated that they could produce a certified copy of the worker's compensation file. *See*, Dkt. Entry No. 125-1 at 17-18.

**D.      Ash Defendant's Request to Call Susan as A Witness**

Finally, the Ash Defendants' request to call Susan as a witness is denied without prejudice to renew at trial.  The Ash Defendants include a single paragraph in their motion stating that, while Plaintiffs object to the Ash Defendants calling Susan as a witness on their case in chief, the Ash Defendants "may not have to call them, depending on the scope of [Plaintiffs'] direct examination and the defendants' cross-examination."  *See*, Ash. Mot. at 8.  Plaintiffs did not respond to the Ash Defendants' request.  *See*, Pls.' Opp'n, Dkt. Entry No. 127.

As set out in the Court's Individual Rules, witnesses that a party intends to call at trial, as well as any objections to such proposed witnesses, are to be listed in the parties' joint pretrial order.  *See*, Judge Irizarry's Individual Rule V.A.3.VII.  Accordingly, the Ash Defendants may list Susan as a witness they intend to call at trial in the parties' forthcoming Second Amended Joint Pretrial Order and respond to any objections from Plaintiffs, if any, at the subsequent pretrial conference.  *See*, Minute Entry dated November 7, 2024 ("Court will have parties file amended JPTO after ruling on the motions *in limine*.").

## II.      Plaintiffs' Motion *In Limine*

Plaintiffs seek: (1) a ruling that the testimony of Dr. Carfi and Dr. Freifelder is admissible; (2) to preclude the written reports authored by Defendants' experts; (3) to preclude Silver and Emolo from testifying regarding (i) any evidence the Court has already ruled as inadmissible, (ii) materials not produced to Plaintiffs during discovery, and (iii) portions of their report containing other inadmissible information; and (4) to be permitted to move at trial to admit the summary charts and tables contained in Dr. Carfi's Life Care Plan and in Dr. Freifelder's economic report.  *See*, Pls.' Mot. at 2.  For the reasons set forth above, Plaintiffs' request to admit the testimony of

11

Dr. Carfi and Dr. Freifelder is granted.  *See,* Section I.A. and I.B., *supra*.  Plaintiffs' remaining requests are discussed below in turn.

### A.  Defendants' Expert Reports

Defendants seek to admit at trial the entire expert reports of Silver, Emolo, Provder, Dr. Weinfeld, and Dr. Marcus.  *See*, Dkt. Entry No. 121 at 12.  Plaintiffs object on the grounds that the expert reports are inadmissible hearsay and redundant given that these experts are expected to testify at trial.  *See*, Pls.' Mot. at 5-6.

While experts may testify on the basis of inadmissible evidence, portions of expert reports that are based on inadmissible information should not be admitted merely because they are included in an expert report.  *See*, *Bynum v. Metropolitan Transp. Auth.*, 2006 WL 6555106, at *9 (E.D.N.Y. Nov. 21, 2006).  Moreover, where an expert is expected to testify at trial, wholesale admission of his expert report is generally inappropriate.  *See*, *Granite Partners, L.P. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 2002 WL 82956, at *7 (S.D.N.Y. May 1, 2002).  *See also*, *Horn v. Medical Marijuana, Inc.*, 2021 WL 1700257, at *6 (W.D.N.Y. Apr. 29, 2021) (citing *Granite Partners*, 2002 WL 82956, at *7).

Defendants do not dispute that the expert reports they seek to admit are hearsay and generally inadmissible.  *See, e.g.*, Ferraro Opp'n at 19 ("Defendants agreed that the expert reports as hearsay should not be admitted with use limited to impeachment purposes.").  Accordingly, Plaintiffs' motion is granted and Defendants are precluded from admitting their experts' reports wholesale.  However, this ruling does not preclude Defendants from moving at trial to admit limited portions of their experts' reports that may not be hearsay, or for some other limited purpose.

**B. Testimony of Silver and Emolo**

Defendants intend to put forth Silver and Emolo as liability experts. *See*, Dkt. Entry No. 121 at 10. Silver is the President of and a Collision Reconstruction Expert at North East Collision Analysis and Safety Associates. *See*, Dkt. Entry No. 123-4 at 144. Emolo is the co-founder of SKE Forensic Consultants LLC, a private consulting firm specializing in accident reconstruction. *See*, Dkt. Entry No. 60-3 at 29.

First, Plaintiffs seek to preclude Silver and Emolo from testifying regarding evidence that the Court has already deemed inadmissible, as well as other evidence that Plaintiffs contend is inadmissible. Pls.' Mot. at 7. Namely, Plaintiffs point to Silver and Emolo's reliance on the police reports generated for the Accident and the deposition testimony of Police Officer Rosenburg, both of which the Court ruled inadmissible on September 23, 2023. *See*, Dkt. Entry No. 92. Plaintiffs also allege that Silver's and Emolo's reports rely on New York State Department Transportation documents that are inadmissible hearsay and that have not been authenticated by a defense witness. *See*, Pls.' Mot. at 7.

Generally, an expert "can testify to opinions based on inadmissible evidence, including some hearsay. But, the expert may not … simply transmit that hearsay to the jury – instead, she must form her own opinions by applying her extensive experience and a reliable methodology to the inadmissible evidence." *Benbow v. Feeley*, 2025 WL 2959912, at *3 (E.D.N.Y. Oct. 20, 2025) (internal quotation marks and citations omitted). Plaintiffs do not contend that Silver's or Emolo's testimony will simply repackage inadmissible evidence for the jury. Should that be the case during trial, Plaintiffs may object at that time. However, the simple fact that Silver's and Emolo's expert opinions may have been formed, in part, based on their review of evidence that may be otherwise inadmissible does not warrant preclusion of their expert testimony.

13

Second, Plaintiffs contend that Silver's testimony should be precluded as it pertains to materials not produced to Plaintiffs during discovery. *See*, Pls.' Mot. at 7. Specifically, Plaintiffs assert that Silver's expert report discusses at least 23 photographs taken of the scene of the Accident, as well as "other measurements and photographs taken during his two site visits," all of which Defendants failed to produce. *Id.* As discussed above, the failure to produce documents reviewed by an expert in forming her opinion does not warrant the exclusion of the entirety of her testimony *per se*, particularly where the failure to disclose was harmless. *See*, *Harkabi*, 2012 WL 826892, at *6-7; *Koppell*, 97 F. Supp.2d at 482. Here, Plaintiffs do not articulate the importance of these photographs and measurements to Silver's testimony. Indeed, Silver's expert report also discloses at least 50 other photographs that he reviewed, in addition to deposition exhibits, Google Earth satellite and street level photographs, and other analyses. *See*, Dkt. Entry No. 63-15 at 1-2. Accordingly, the Court declines to preclude Silver's testimony on this basis, and Defendants are directed to produce the 15 photographs as well as the photographs and measurements from Silver's site visits to Plaintiffs.

Finally, Plaintiffs assert that Silver and Emolo should be precluded from testifying because they make impermissible legal conclusions in their expert reports. Pls.' Mot. at 8. Defendants did not oppose Plaintiffs' assertion. As a general rule, expert witnesses may not testify regarding issues of law. *See*, *U.S. v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991). "Although an expert may opine on an issue of fact within the jury's province, he may not give testimony stating ultimate legal conclusions based on those facts." *Micone v. Sarene Servs., Inc.*, 2025 WL 736638, at *39 (E.D.N.Y. Mar. 8, 2025) (internal quotation marks omitted) (citing *Bilzerian*, 926 F.2d at 1294)).

Both Silver and Emolo reach impermissible legal conclusions in their expert reports. Silver opines that there is "no evidence that Rohr operated his vehicle in an inappropriate, negligent or

reckless manner," and that Ash Transport was not negligent in hiring Rohr. *See*, Dkt. Entry No. 63-15 at 20, 31-33. Emolo similarly opines that there is no evidence that Rodriguez was "not operating his tractor trailer in a safe and reasonable manner" and that "[Edward's] actions were the sole proximate cause of" the Accident. *See*, Dkt. Entry No. 60-3 at 26-27. The negligence of Defendants and whether Edward's actions were a proximate cause of the Accident are ultimate legal questions in this case, and Defendants state no grounds upon which such legal conclusions are permissible. *C.f.*, *Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992) ("[A]n expert's testimony that a defendant was 'negligent' should not have been allowed."); *See also*, *Dooley v. U.S.*, 577 F. Supp.3d 229, 234 (S.D.N.Y. 2021) ("[E]xperts in personal injury cases may not testify that an act or omission was the 'proximate cause' of the injury."). Accordingly, Silver and Emolo are precluded from testifying about legal conclusions regarding the negligence of Rohr or Rodriguez or whether Edward was a proximate or legal cause of the Accident.

For the reasons stated above, Plaintiffs' motion *in limine* to preclude the expert testimony of Silver and/or Emolo is granted in part, and Silver and Emolo are precluded from testifying about legal conclusions regarding the Defendants' negligence or whether Edward was legally at fault. Plaintiffs' motion is denied as to Silver and Emolo testifying regarding inadmissible evidence and materials not produced in discovery. Defendants are directed to produce the photographs and measurements reviewed by Silver and not previously disclosed to Plaintiffs.

### C. Exhibits Contained in Dr. Carfi's and Dr. Freifelder's Reports

Finally, Plaintiffs seek to preserve "their ability to move to admit limited portions of their expert reports during the course of trial." *See*, Pls.' Mot. at 8. Defendants counter that such excerpts are inadmissible hearsay. *See*, Ferraro Opp'n at 20.

Exhibits in a party's expert report that are demonstrative of an expert's conclusions are generally admissible.  *See*, *Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*, 2019 WL 2330855, at \*15 (E.D.N.Y. May 31, 2019).  Plaintiffs' motion *in limine* does not specify which portions of their expert reports they will seek to admit or for what purpose(s).  While generally admissible, it would be premature at this stage to admit or exclude such proposed excerpts without the appropriate factual context.  Accordingly, the Court reserves decision until trial, and Defendants may make its objections at that time.

### CONCLUSION

For the reasons set forth above: (1) Defendants' motion to preclude the expert testimony of Dr. Carfi and Dr. Freifelder is denied, and Plaintiffs are directed to produce the W-2s and tax statements relied on by Dr. Freifelder by April 14, 2026; (2) the Ash Defendant's motion to call Plaintiffs as witnesses at trial and to exclude Rohr's motor vehicle report is denied without prejudice to renew at trial; (3) Plaintiffs' motion to admit the testimony of Dr. Carfi and Dr. Freifelder and to preclude Defendants from admitting the expert reports of Silver, Emolo, Provder, Dr. Weinfeld, and Dr. Marcus is granted; and (4) Plaintiffs' motion to preclude the expert testimony of Silver and Emolo is granted in part and denied in part, and Defendants are directed to produce the photographs and measurements relied on by Silver by no later than April 14, 2026. The Court reserves decision until trial as to the admissibility of the excerpts of Dr. Carfi's and Dr. Freifelder's expert reports.

SO ORDERED.

Dated:  Brooklyn, New York
      March 31, 2026

/s/
_____
DORA L. IRIZARRY
United States District Judge

16